A jury found appellant guilty of rape. The court fixed his punishment at imprisonment for life and sentenced him accordingly.
The alleged victim of the rape testified that at about 10:30 P.M., Friday, June 22, 1979, she and a female companion were walking from a "convenience store" toward the victim's apartment when they noticed a man following them. According to her further testimony, as the two females reached the victim's apartment steps the man asked them if they had any money. The victim let him have three dollars and some change, and her companion let him have her billfold. Immediately thereafter the man pulled a pistol and told them to walk to the corner to an automobile about half a block down the street, a street in the southwest section of Birmingham known as West End. He told them to get in the automobile, to lie down therein and keep their eyes closed. He then drove the automobile a short distance, past some apartments, near a dumpster and there stopped the automobile, raped one of the two women and then raped the other. He then drove the automobile with the two women in it to an unidentified apartment which the three entered. He then raped each of the women again in a bed in the apartment. Thereafter, he returned them to the apartment from which he had brought them.
The alleged victim was the only person who testified as to the facts of the alleged crime. We are not apprised by the evidence of what happened to the other victim.
Appellant's attorney argues with commendable vigor that the evidence was too weak to sustain a conviction for rape. He bases his argument largely on the fact that there was little resistance by the alleged victim or the other victim, the delay upon the part of the alleged victim in reporting the crime, inability of the alleged victim to present medical evidence of rape, the failure of the other victim to claim or report that she had been raped, and the generally recognized caveat as to the testimony of a witness identifying as the criminal a person she did not know and whom she had never before seen. Appellant does not contend that there was no substantial evidence of defendant's guilt. The victim was positive in her identification of defendant. Her explanation for her failure to resist violently defendant's aggressive conduct was her unrelenting fear of him during the entire time that he was with her; four or five hours intervened between his stopping her and her companion at the steps of the alleged victim's apartment and his return of them to the apartment. The alleged victim explained her failure to report the incident by her continued fear of defendant, which was emphasized by the express or implied threats he had made to her and the other victim.
Irrespective of the strong argument of counsel for appellant as to the claimed weakness of the evidence against defendant, an appellate court is not the proper forum to pass upon the merits of such an issue unless that issue has been first raised and determined in the trial court. What we have said is sufficient to show that there was substantial evidence of defendant's guilt, which of itself presented a jury issue and which justified the trial court in overruling defendant's motion to exclude the evidence. We need say no more on the particular point, but we observe that the shocking nature of the evidence as to what actually occurred, the singularity of the plurality of four rapes by the same man on the same night and the entire circumstances seem "incredible," as that word is often *Page 1290 
used, but they are not sufficient to convince us that the jury was not justifiably convinced beyond a reasonable doubt of the guilt of defendant or that its verdict was wrong or unjust. There is no contention that the verdict could have been influenced by any possible ethnic difference between the defendant and either victim. The evidence indicates that there is none. We make no effort to determine at this time whether defendant was tried and convicted for the rape of the alleged victim that the evidence shows occurred in the automobile or for the rape that occurred, according to the evidence, in the apartment. We deem it better, as counsel for the parties have done, to leave that subject without further comment.
Appellant attempts to find a valid ground for urging that the judgment should be reversed in the action of the trial court in overruling a motion by defendant for a mistrial as to an incident that occurred when the alleged victim of the crime left the witness stand. The motion was first presented by defendant's counsel just after the witness who succeeded the victim as a witness had been called to the stand and had been sworn. The following then occurred:
 "MR. ADAMS: Your Honor, before the State takes this witness, at this time, I would like to make a motion for a mistrial because of the conditions.
"THE COURT: Overruled."
The witness who followed the victim as a witness was Officer Burroughs. When her testimony was finished, counsel for defendant made it known to the court that he would like to present again the motion for a mistrial and to amplify the record as to what occurred. By agreement of all concerned, an in camera hearing was then conducted, at which the following occurred:
 "MR. ADAMS: Your Honor, at this time I would like to make a motion that the Court Reporter could show that prior to Officer Burroughs testifying, at the time that I made my motion for a mistrial, that there was audible sobbing, hysterical crying from Miss Hunter [the alleged victim]. It was extremely audible, in the presence of the jury. At that time I made a motion for a mistrial and it was denied.
 "THE COURT: All right. The witness, at the end of the testimony, had a little difficulty holding up. You could tell she was crying. And when she left the stand she did cry and you could hear it outside the room.
 "But, I don't think the type was sufficient enough to cause any mistrial.
 "Any witness under such a situation is going through a trauma after testifying. I think she held up as long as she could. And outside the room, she broke down. I would overrule.
"MR. ADAMS: Thank you, Your Honor.
 "MR. CAHILL: We would like the record to reflect also that this situation came in response to questions asked by the defense attorney, which were objected to very strenuously by the State. And any crying by the witness was brought on by the actions of the defense.
 "THE COURT: The defense attorney was asking proper questions, he was representing his client in trying to give good and thorough cross-examination. It was perfectly proper.
"MR. ADAMS: Thank you, Judge Nice."
The trial court handled the untoward but not unprecedented occurrence with commendable sagacity, fairness and courtesy to all concerned. Furthermore:
 "The granting or denying of a motion for mistrial is within the sound discretion of the trial judge because he is in a much better position to determine what effect, if any, some occurrence may have had upon the jury's ability to decide the defendant's fate fairly and justly. This is particularly true where a disturbance at the trial is not completely incorporated into the record as in the present case. We will not interfere with the trial judge unless there has been a clear abuse of his discretion. . . ." Perry v. State, Ala.Cr.App., 368 So.2d 305
(1978), rev'd on other grounds, 368 So.2d 310 (1979).
The following written charges requested by defendant were refused: *Page 1291 
 "Testimony tending to prove identity is to be scrutinized with extreme care.
 "No class of testimony is more uncertain and less to be relied upon than that of identity.
 "The possibility of human error or mistake, and the probable likeness or similarity of objects and persons are elements that you must act upon in considering testimony as to identity. You must carefully consider these factors passing upon the credibility that you attach to the witness's testimony, and you must be satisfied beyond a reasonable doubt as to the accuracy of the witness's identification of the defendant.
 "The identity of the defendant as the culprit must be shown with such certainty as to preclude any possibility of error.
 "The identity of the defendant must be proven with that degree of moral certainty that amounts to prove beyond a reasonable doubt so as to preclude any probability of a mistake having been made."
We find nothing in any of the authorities cited by appellant that will support his contention that each or any of such charges should have been given. We have found no authority to that effect. In our opinion, each of them was properly refused.
We have considered all of appellant's contentions for a reversal and have searched the record for error prejudicial to defendant. We find no such error and conclude that the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.
 *Page 109